UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN REAVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-00151-JPH-DLP |
| ) | |
| WEXFORD MEDICAL SERVICES, et al. ) | |
| ) | |
| Defendants. ) | |

**Order Granting in Part and Denying in Part
Indiana Department of Correction's Motion for Summary Judgment**

Kevin Reaves alleges that Indiana Department of Correction ("IDOC") failed to accommodate his legal blindness in violation of the Rehabilitation Act when he was incarcerated at Plainfield Correctional Facility ("PCF"). Specifically, he alleges that because of this condition: (1) he could not walk to the medication line or the dining hall and (2) he could not use a computer to order commissary. Mr. Reaves claims that IDOC failed to accommodate these impairments. IDOC moves for summary judgment on this claim. For the following reasons, IDOC's motion for summary judgment is **granted in part and denied in part**.

**I. Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## II. Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Reaves as the nonmoving party. *See Barbera v. Pearson Education, Inc.*, 906 F.3d 621, 628 (7th Cir. 2018).

### A. Mr. Reaves's Condition

Mr. Reaves has albinism. Dkt. 237-1 at 21:13 (Reaves deposition). His symptoms include nystagmus (involuntary twitching of the eyes), sensitivity to light, and poor depth perception. *Id.* at 100:1–101:18. Mr. Reaves's eyes twitch especially badly when he looks at a lighted screen or steps onto an elevated surface. *Id.* at 100:14–20. This twitching can cause vertigo-like disorientation and cause him to lose his balance. *Id.* at 99:23–24, 100:14–24. It also prevents him from reading unless fonts are increased to a size that is readable for him. *Id.* at 117:2–4. Mr. Reaves is also legally blind. Dkt. 208-3 at 1. And his skin is very sensitive to sun exposure. Dkt. 237-1 at 132:11–13.

Mr. Reaves was incarcerated by IDOC at PCF from January 11, 2019, to January 30, 2020. *Id.* at 13:9–10. Although IDOC records from March 12, 2019, reflect that Mr. Reaves is "legally

blind," dkt. 208-3 at 1, until July 2019, he was classified as having no disability and being capable of performing activities of daily living. Dkt. 208-3 at 2–6.

### B. Mr. Reaves's Maintenance Crew Work

Mr. Reaves was incarcerated and was assigned to work with a maintenance crew at Miami Correctional Facility ("MCF") before his transfer to PCF. Dkt. 242-1 ¶ 9. Most of the work for this crew included mowing the lawn and maintenance of the grounds. *Id.* But because of Mr. Reaves's poor vision, he was unable to work outside with any regularity, especially during the summer months. *Id.* ¶ 11. Instead, he performed office work, picked up noticeable, large pieces of trash or paper, and did simple indoor tasks like mopping or sweeping. *Id.*

### C. Mr. Reaves's Impairments and Requests for Accommodation

#### 1. Vision

Because of his legal blindness and nystagmus, Mr. Reaves could not use the computer kiosks to order commissary at PCF, nor the tablets that other prisoners used for commissary orders and other activities. Dkt. 237-1 at 21:7–13; *id.* at 82:11–15. Mr. Reaves filed a grievance about his inability to use the kiosks about two weeks after he arrived at PCF. *Id.* at 82:1–3. When IDOC grievance coordinator Jeremy Jones received Mr. Reaves's grievance, he reached out to medical staff asking whether Mr. Reaves could use the kiosk. Mr. Reaves saw a doctor who concluded that Mr. Reaves "should be able to see well enough to ambulate," but that he "is legally blind…and would not be able to see commissary slip." Dkt. 208-3. Medical staff then provided Mr. Jones this information. Dkt. 208-6 at 2.

Mr. Reaves was able to use paper commissary slips at MCF but was denied them at PCF. Dkt. 237-1 at 17:16–21; *id.* at 21:14–20; *id.* at 120:21–121:4.[1] During his time at PCF, though, he submitted about 65 commissary orders with help from other inmates. Dkt. 208-5; dkt. 237-1 at 21:16–20; *id.* at 88:21–22. PCF staff did not assign these inmates to assist Mr. Reaves. Rather, he paid them with food or money. Dkt. 237-1 at 21:16–20. He did not report this to prison authorities because he feared he would be harmed, and he could not protect himself because of his blindness. *Id.* at 91:20–92:20. Mr. Reaves also had to ask another inmate to fill out healthcare request forms for him while at PCF. *Id.* at 24:5–8.

### 2. Ambulation

Mr. Reaves can walk but has problems getting around because of his difficulty seeing. *Id.* at 116:2–7. Before he was in prison, he used a cane as a guide. *Id.* at 109:5–24; *id.* at 114:13–23. At PCF, Mr. Reaves had trouble traveling to and from the chow hall, the medication window, and the commissary kiosk because of his poor vision. *Id.* at 122:16–24; *id.* at 133:7–21; *id.* at 141:7–18. Sometime in February or early March of 2019, he requested a companion to guide him within PCF. *Id.* at 105:4–10. That request was denied. *Id.* at 106:7–15, 20–21. Mr. Reaves filed a healthcare request form alerting medical staff that he was having trouble getting to the medication window to receive his medications, and they directed him to file a grievance. *Id.* at 124:10–14. Mr. Reaves requested that PCF medical staff deliver his medications to him, but this request was also denied. *Id.* at 130:2–24, 131:1–5.

---

[1] IDOC says that Mr. Reaves was provided scantron sheets for commissary orders, dkt. 208-2 ¶ 11, but because Mr. Reaves testified that he did not receive paper forms, this fact is presented in the light most favorable to Mr. Reaves, as the non-movant.

### III. Discussion

Under the Rehabilitation Act, no qualified individual with a disability "shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a failure-to-accommodate claim under the Rehabilitation Act, Mr. Reaves must show: "'(1) he is a qualified person (2) with a disability and (3) the [IDOC] denied him access to a program or activity because of his disability.'" *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (quoting *Jaros v. Ill. Dep't. of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)).

### A. Qualified individual with a disability

A disability is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual…." 42 U.S.C. §12102; 29 U.S.C. 1630.2(g); 29 U.S.C. § 1614.203(a)(2) (West 2021) (applying definition of "disability" from the Americans with Disabilities Act to the Rehabilitation Act). Major life activities include, but are not limited to, "[c]aring for oneself, performing manual tasks, *seeing*," "walking," and "reading." 29 U.S.C. 1630.2(i)(1) (emphasis added).

Mr. Reaves testified that because of his poor vision and nystagmus, he had difficulty reading computer screens and navigating the prison facility, especially when he had to go outside. IDOC does not dispute this but nevertheless argues that Mr. Reaves's poor vision does not qualify as a disability because (1) his medical records indicate that he had no disability, dkt. 208-3 at 2–8, and (2) medical staff at PCF concluded that he "should be able to see well enough to ambulate," 208-3 at 1, and that he "demonstrates an appropriate degree of knowledge and motivation and is

able to perform self-care." Dkt. 208-3 at 8. IDOC also points out that Mr. Reaves submitted 65 commissary orders at PCF and held a landscaping job during his time at MCF. Dkt. 208-5.

While medical staff designated Mr. Reaves as not having a disability, they also reported that he was "legally blind," dkt. 208-3 at 1, a condition which supports a disability code B, *see id.* at 2–8. And while medical staff concluded that Mr. Reaves should have been able to see well enough to get around, he reported that he could not get to chow or medicine pickup without help. Dkt. 237-1 at 105:4–10. Mr. Reaves's prescriptions lapsed, and he bought substantial amounts of food from the commissary in lieu of going to meals. *Id.* at 64:6–12; *id.* at 134:10–13.

Mr. Reaves testified that other inmates assisted him in submitting commissary orders because he could not read the computer screen. Dkt. 237-1 at 21:16–20; *id.* at 88:21–22. Regarding his job at MCF, Mr. Reaves testified that he was unable to do much of the landscaping work and instead picked up trash or worked inside doing simple tasks such as sweeping or mopping. Dkt. 242-1 ¶ 9. IDOC has not designated evidence refuting Mr. Reaves's testimony regarding these points.

It is undisputed that Mr. Reaves is legally blind. From the undisputed facts and Mr. Reaves's designated evidence, a jury could conclude that Mr. Reaves's vision problems prevented him from eating in the chow hall, picking up his medication, and ordering from the commissary without paying other inmates for assistance. A jury could therefore conclude that his physical impairment "substantially limits one or more of [his] major life activities …," and therefore, he has a disability. 42 U.S.C. § 12102; 29 U.S.C. 1630.2(g); 29 U.S.C. § 1614.203(a)(2) (West 2021).

### B. Denial of access to programs because of a disability

#### 1. Denial of access

Mr. Reaves alleges that he was denied access to commissary, the medication line, and the dining hall at PCF because of his disability. IDOC argues that Mr. Reaves had access to other means to obtain commissary items, including scantron slips, GTL tablets, and kiosk machines to order commissary. Dkt. 208-2 ¶ 11. IDOC further argues that Mr. Reaves was not denied access to the dining hall or the medication line because he was able to walk to both the dining hall and the medication line without assistance.

Mr. Reaves testified that he was not given scantron sheets and instead had to rely on other inmates to help him order commissary. Dkt. 237-1 at 21:16–20; *id.* at 88:21–22. He also had serious difficulties walking to the dining hall and the medication line because of his legal blindness and sensitivity to sunlight. *Id.* at 122:16–24; *id.* at 133:7–21; *id.* at 141:7–18. He stopped going because of these difficulties and, as a result, he purchased food from commissary and his medications were discontinued. *Id.* at 122:16–123:20, *id.* at 134:2–13.

Mr. Reaves has designated evidence showing that he was not able to access the commissary, the dining hall, or the medication line because he was not given an accommodation, and thus, he was denied access to those programs. *See Jaros*, 684 F.3d at 672 (accessing meals and showers are programs under the Rehabilitation Act); *Woodson v. IDOC*, 2018 WL 4899677 * 1 (N.D. Ind. Oct. 9, 2018) (ordering commissary is a program or activity).

### 2.    **Because of a disability (intentional discrimination)**

To recover damages under the Rehabilitation Act, Mr. Reaves must also show that he was discriminated against intentionally. *Strominger v. Brock*, 529 Fed. Appx 508, 511 (7th Cir. 2014). To show intentional discrimination, Mr. Reaves must demonstrate that the defendant was deliberately indifferent to the risk of a violation of his rights. *See King v. Hendricks County Comm'rs*, 954 F.3d 981, 988–89 (7th Cir. 2020). In other words, he must show that the defendant:

7

"(1) knew that a harm to a federally protected right was substantially likely and (2) failed to act on that likelihood." *Prakel v. Indiana*, 100 F. Supp. 3d 661, 684 (S.D. Ind. 2015).

### a.     Access to commissary

While at PCF, Mr. Reaves filed a grievance notifying staff of his inability to order commissary. Dkt. 237-1 at 82:1–3. When Mr. Jones, an IDOC grievance coordinator, investigated this request, medical staff told him that Mr. Reaves was "legally blind," would need "modifications," and would not be able to order commissary due to his vision. Dkt. 208-6 at 2. While IDOC states that Mr. Reaves was given paper commissary slips, dkt. 208-2 ¶ 11, Mr. Reaves testified that his request for hard-copy slips was denied. Dkt. 237-1 at 21:7–24.

Viewing the evidence in the light most favorable to Mr. Reaves, as the Court must do at summary judgment, a reasonable jury could conclude that Mr. Reaves required an accommodation for ordering commissary, that Mr. Jones knew Mr. Reaves needed this accommodation, and that Mr. Jones denied Mr. Reaves the accommodation. IDOC is therefore not entitled to summary judgment on Mr. Reaves's claim that he was intentionally denied a necessary accommodation for placing commissary orders. *See King*, 954 F.3d at 989 (assuming that the deliberate indifference standard applies to Americans with Disabilities Act claim); *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 345–48 (11th Cir. 2012) (applying deliberate indifference standard and citing cases); *Prakel*, 100 F. Supp. 3d at 685.

### b.     Mobility and access to dining hall

Mr. Reaves asked for assistance getting around the facility, *id.* at 126:4–11, 129:8–18, but his request was denied, *id.* at 129:8–18. When Mr. Jones asked medical staff about Mr. Reaves's ability to see, medical staff told Mr. Jones that Mr. Reaves "should be able to see well enough to ambulate." Dkt. 208-6 at 2; dkt. 208-3 at 1. The designated evidence shows that Mr. Jones based

his decision on information provided by medical providers. Mr. Reaves has not designated evidence showing that Mr. Jones or any other IDOC official knew that Mr. Reaves needed an accommodation yet deliberately disregarded that need. IDOC is entitled to summary judgment on Mr. Reaves's claim that he was not provided an accommodation for getting around the facility.

### IV. Conclusion

IDOC's motion for summary judgment, dkt. [237], is **denied** as to Mr. Reaves's claim that he was denied an accommodation for placing commissary orders and **granted** as to all other claims. The Court will direct further proceedings in a separate order.

**SO ORDERED**.

Date: 9/29/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEVIN REAVES
2837 Boulevard Place
Indianapolis, IN 46208

All Electronically Registered Counsel